**MIDWEST RADIO COMPANY, INC., James Lakoduk, Larry Lakoduk, M.R.C. Liquidating Trust, Appellants,**

v.

**FORUM PUBLISHING COMPANY, and WDAY, Inc., Appellees.**

No. 90–5261.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1991.

Decided Aug. 26, 1991.

Mastrandrea's argument, does not affect the validity of the indictment.

Richard A. Lockridge, Minneapolis, Minn., argued (Raymond Oechsler, Minneapolis, Minn. and Robert Vaaler, Grand Forks, N.D., on brief), for appellants.

Douglas R. Herman, Fargo, N.D., argued (Glenn Mitchell, David U. Fierst, Washington, D.C., and Bruce D. Quick, Fargo, N.D., on brief), for appellees.

Before WOLLMAN and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Midwest Radio Company, Inc., James Lakoduk, Larry Lakoduk, and M.R.C. Liquidating Trust (collectively, Midwest) appeal from the district court's[1] grant of summary judgment in favor of Forum Publishing Company, WDAY, Inc., and William Marcil (collectively, Forum) in this private antitrust action claiming monopolization violations of section 2 of the Sherman Act, 15 U.S.C. § 2. We affirm.

## I.

Midwest operated radio stations KQWB–AM and KQWB–FM in the Fargo, North Dakota–Moorhead, Minnesota, metropolitan area during the relevant time frame—1982 to mid–1984. Forum published during the same period *The Fargo Forum*, the only general circulation daily newspaper in Fargo–Moorhead, as well as operating two radio stations, WDAY–AM and WDAY–FM, and a network-affiliated television station, WDAY–TV. Forum hired seven employees from KQWB to work at WDAY radio in November 1982. Midwest sued Forum, alleging in its complaint, among other things, that Forum intended to monopolize the mass media advertising market in Fargo–Moorhead through anti-competitive acts, including the predatory hiring of KQWB radio talent. Midwest also alleged that Forum had misappropriated trade secrets. The district court granted summary judgment for Forum on the antitrust claims and on the trade secrets issue. Forum prevailed in a jury trial on the remaining state claims of tortious interference with contract and unfair competition.

Midwest alleged that Forum successfully solicited David Aamodt, then sales manager for KQWB, and Randolph Naslund, then an advertising sales representative for KQWB, to switch their employment to WDAY's AM and FM radio operations. According to Midwest, Aamodt and Naslund in turn encouraged other KQWB employees to leave KQWB without notice and move to WDAY. Beyond the raid of key personnel, Midwest alleged that Forum wrongfully obtained Midwest's customer lists, sales system, and music programming coding system, all of which Midwest contended were trade secrets. Midwest also asserted that WDAY–FM committed predatory acts in that it charged advertising rates that were well below its cost, changed its radio format to one very similar to KQWB's, and operated for a time without on-air commercial advertising. Midwest pointed to *The Fargo Forum*'s policy of rarely referring to other news media except those owned by Forum as an example of Forum's monopoly power.

The district court's memorandum opinion answered each of Midwest's allegations and granted summary judgment for Forum. We agree with the district court that summary judgment for Forum was appropriate given Midwest's failure to prove that there is a material issue of fact in each of its antitrust claims. We conclude that Midwest provides us no basis for overturning the district court's decision.

## II.

■ Contrary to Midwest's assertions, there is no longer any question about the propriety of granting summary judgment in antitrust cases. Although in days past courts may have been inhospitable to summary judgment motions—and especially so in antitrust cases—that era is over. As we explained in *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273 (8th Cir.1988), any hesitation about granting summary judgment motions is no longer appropriate in the light of the Supreme Court's decisions in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We laid to rest any notion that heightened standards for summary judgment apply in complex antitrust cases. *City of Mt. Pleasant*, 838 F.2d at 274.

---

**1.** Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

## III.

Midwest alleged Forum's actual and attempted monopolization of the mass media advertising market in Fargo–Moorhead. Two basic elements must exist to establish a case under section 2 of the Sherman Act: possession of monopoly power in the relevant market and the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Paschall v. Kansas City Star Co.*, 727 F.2d 692, 695–96 (8th Cir.1984), *cert. denied*, 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984). To determine whether monopoly power exists, the market relevant to the case must be defined in geographic and product terms. *General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 804–05 (8th Cir.1987). *See also Baxley–DeLamar Monuments, Inc. v. American Cemetery Ass'n*, 938 F.2d 846, 850–851 (8th Cir.1991).

The geographic market in this case is agreed to be the Fargo–Moorhead metropolitan area. Midwest argued that the relevant product market consists of *The Fargo Forum*, commercial radio, and commercial television. Forum challenged Midwest's proposed definition as too narrow and suggested that it should include other competitive advertising media, such as billboards, weekly newspapers, and direct mail. The district court agreed with Forum. This was not error. The question of relevant product market composition, although usually one of fact for the jury, must present an issue of material fact in order to constitute a jury question. Midwest produced no evidence to support its exclusion of media such as billboards, weekly newspapers, magazines, and direct mail from its proposed definition of the mass media advertising market; indeed, it acknowledged that these media competed directly with television, radio, and the daily newspaper in the Fargo–Moorhead market. Accordingly, the district court did not err in concluding that as a matter of law Forum did not control a monopoly on the mass media advertising market. *See Belfiore v.*

*New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987).

Count II of Midwest's complaint alleged that Forum's hiring of KQWB's employees constituted an attempt to achieve monopoly power in violation of section 2 of the Sherman Act. To prevail on a claim of attempted monopolization under section 2, a plaintiff must establish:

(1) A specific monopolistic intent on the part of the defendant;

(2) predatory or anticompetitive conduct by the defendant directed to accomplishing the unlawful purpose;

(3) a dangerous probability of success; and

(4) antitrust injury.

*General Indus. Corp.*, 810 F.2d at 801.

We find persuasive the analysis of the Ninth Circuit in *Universal Analytics, Inc. v. MacNeal–Schwendler Corp.*, 914 F.2d 1256 (9th Cir.1990) (per curiam). There the court looked at whether the action in hiring employees of a rival firm had a legitimate business purpose, or whether talent was acquired not for purposes of using that talent but for the purpose of denying it to a competitor. Citing III P. Areeda & D. Turner, *Antitrust Law* ¶¶ 702(a)–702(c) at 108–110 (1978), the Ninth Circuit stated the rule as follows:

Unlawful predatory hiring occurs when talent is acquired not for purposes of using that talent but for purposes of denying it to a competitor. Such cases can be proved by showing the hiring was made with such predatory intent, i.e. to harm the competition without helping the monopolist, or by showing a clear nonuse in fact. Absent either of those circumstances, according to Professors Areeda and Turner, employment should not be held exclusionary.

*Universal Analytics*, 914 F.2d at 1258 (footnote omitted).

The evidence shows that the seven KQWB employees hired away by WDAY were in fact used by WDAY to improve the radio station's performance in the market. When a valid business reason exists for the conduct alleged to be preda-

tory or anti-competitive, that conduct cannot support the inference of a section 2 violation. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985). Forum explained its acts of hiring new, talented KQWB employees, lowering advertising rates, and eliminating advertising during the first months of its new format by pointing to the need for WDAY to attract new listeners and new advertisers. WDAY radio stations were ranked sixth and seventh out of seven local stations in the spring of 1982. WDAY's attempt to revive the failing stations constituted a valid justification for improving its services to its customers—both advertisers and listeners. We see few alternatives for a radio station to improve its position in the market other than by enhancing its relationship with its advertisers and listeners by providing a better product at a lower price. Accordingly, we agree with the district court that Midwest failed to demonstrate the existence of a genuine issue of material fact on this aspect of its complaint against Forum.

Finally, we can detect no antitrust injury to Midwest. The business decisions of WDAY that KQWB alleges to be anti-trust violations were not anti-competitive at all. In fact, we perceive that WDAY's attempt to turn up the heat of the competition most likely improved the radio programming in Fargo–Moorhead by providing better talent, more appealing music, and a healthy rivalry among competitors for mass media advertising dollars.

To the extent that Midwest has raised contentions on appeal that we have not addressed specifically in this opinion, we reject them on the basis of the reasoning set forth in the district court's memorandum opinion.

The judgment of the district court is affirmed.