Marvin F. and Carol L. **BORMANN, et al.**

v.

**APPLIED VISION SYSTEMS, INC., et al.**

**Civ. No. 4–90–680.**

United States District Court, D. Minnesota, Fourth Division.

Feb. 28, 1992.

Mark J. Vieno, Minneapolis, Minn., for plaintiffs.

Sherri L. Rohlf, Wood R. Foster, Jr., Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, Minn., for defendants.

## ORDER

ROSENBAUM, District Judge.

Plaintiffs seek a return of funds lost, and damages they claim to have incurred, as a result of their purchase of securities offered by defendant Applied Vision Systems, Inc. (AVSI). Plaintiffs commenced this twenty-two count lawsuit on August 30, 1990. They claim violations of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the 1933 Act); the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the

1934 Act); the Minnesota Securities Act, Minn.Stat. § 80A.01 *et seq.;* the North Dakota Securities Act, N.D.Cent.Code § 10–04–01, *et seq.;* and the South Dakota Securities Act, S.D.Codified Laws § 47–31A, *et seq.,* and they assert common law fraud claims.

The Court has jurisdiction over this matter, pursuant to Section 22 of the 1933 Act, 15 U.S.C. § 77v, Section 27 of the 1934 Act, 15 U.S.C. § 78aa, and this Court's pendent jurisdiction.[1]

At oral argument, counsel for the parties stipulated to the dismissal of Counts 2 and 3 in their entirety. Counsel then agreed to dismiss certain claims in Counts 4, 5, 6, 8, 12, 13, 14, 15, and 17, insofar as those claims were based on securities purchases made prior to July 24, 1987.

Defendants move for summary judgment on eight of the remaining counts. As to Counts 7, 8, 15, 16, and 17, defendants assert that plaintiffs' claims are untimely and barred by applicable statutes of limitations. As to the fraud claims in Counts 12, 13, and 14, defendants contend that plaintiffs have failed to produce any evidence of reliance, an essential element of these claims.

Based upon the files, records, and proceedings herein, and for the reasons set forth below, Counts 7, 8, 15, 16, and 17 are dismissed as untimely. As to Counts 12, 13, and 14, defendants' motion for summary judgment is granted, based upon plaintiffs' failure to produce evidence of reliance.

*Background*

AVSI was a Minnesota corporation formed in 1984 to design, develop, manufacture, and market an automatic optical inspection (AOI) system. The goal was a system which would permit "non contact" inspection of printed circuit board layers and art work. The business was, ultimate-

---

1. Congress recently codified the doctrines of pendent and ancillary jurisdiction in a new statutory provision entitled "supplemental jurisdiction." 28 U.S.C. § 1367. However, this provision only applies to civil actions commenced after December 1, 1990. *Miller v. Glanz,* 948

F.2d 1562, 1568 (10th Cir.1991). Because this cause was commenced August 30, 1990, it is governed by the pendent jurisdiction rules of *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

ly, unsuccessful and AVSI ceased operations in February, 1991.

Beginning in 1987, AVSI sought capital from outside investors. To this end, AVSI made private placement offerings of AVSI securities in 1987, 1988, and 1989. Each offering is summarized below.

### 1. *The 1987 Private Placement*

In April, 1987, AVSI offered to sell a minimum of 430,000, and a maximum of 1 million, shares of AVSI common stock, at $1.75 per share. This was to be accomplished through a Private Placement Memorandum, dated April 29, 1987 (the 1987 PPM). The shares were offered by Engler–Budd Company, Inc. (Engler–Budd), on a "best efforts, minimum-maximum" basis. The placement was to be completed by May 31, 1987. The 1987 PPM explicitly reserved the right to extend the offering for an additional 30 days. Rohlf Aff., Att. 1.

In the event that the minimum number of shares was not sold by the specified date, the 1987 PPM provided for termination of the offer and return to subscribers of the proceeds with interest. During the escrow period, purchase subscriptions were irrevocable and the subscription proceeds were to be held in escrow.

The issue was not fully subscribed by May 31, 1987, and so, on June 30, 1987, AVSI issued "Supplement No. 1 to Confidential Private Placement Memorandum" (Supplement No. 1). This supplement extended the closing date of the 1987 PPM offering to July 31, 1987. Rohlf Aff., Att. 11. The offering was further extended on August 12, 1987, when AVSI issued "Supplement No. 3 to Confidential Private Placement Memorandum" (Supplement No. 3), which extended the offering to August 31, 1987. Rohlf Aff., Att. 13. Finally, in a letter to shareholders, dated October 6, 1987, AVSI extended the 1987 PPM offering to October 15, 1987. Rohlf Aff., Att. 15. This offering, however, was restricted to persons who already owned AVSI common or preferred stock prior to April 29, 1987.

Sales pursuant to the 1987 PPM occurred in two phases. On July 24, 1987, after meeting the minimum sale requirement, AVSI broke escrow and closed the sale of 432,858 shares of AVSI common stock.

Certain of the plaintiffs, Arthur J. Kohler, Jr., Arthur J. and Elsie Kohler, Sr., Donald W. Opheim, and William R. Zimbinski (the Phase I plaintiffs), purchased their AVSI securities prior to July 24, 1987. By agreement of the parties, the claims of these plaintiffs have been dismissed as being outside the applicable statute of limitations. A second, and for this case more important, group of plaintiffs purchased stock after July 24, 1987, but prior to August 31, 1987, when AVSI closed on the sale of an additional 190,000 shares of common stock. These plaintiffs' purchases are summarized as follows:

| Shareholder | Date of Subscription Agreement | Amount |
| --- | --- | --- |
| Leonard S. Lewicke | 7/28/87 | $ 17,500 |
| John F. & Carol M. Johnson | 8/4/87 | 17,500 |
| Richard L. Crowell | 8/8/87 | 17,500 |
| Donald W. Opheim | 8/24/87 | 8,750 |

Rohlf Aff., Att. 7, 8, 9, and 10.

AVSI filed a "Notice of Sale of Securities Pursuant to Regulation D" with the United States Securities and Exchange Commission (SEC), pursuant to Rules 505 and 506 of Regulation D. Rohlf Aff., Att. 16. Defendants complied with the Minnesota and North Dakota blue sky laws, pursuant to Minnesota Statutes, § 80A.15, and North Dakota Century Code, § 10–04–06, on April 30, and August 3, 1987, respectively. On April 15, 1987, AVSI filed a "Statement of

Issuer," with the Minnesota Department of Commerce. Rohlf Aff., Att. 17.

### 2. *The 1988 Private Placement*

In March 1988, AVSI offered a minimum of 539,411 units and a maximum of 875,000 units at $3.00 per unit. Each unit consisted of two shares of Class A common stock and one warrant. This offering was made by Private Placement Memorandum, dated March 30, 1988 (the 1988 PPM). Rohlf Aff., Att. 22.

The 1988 PPM required a minimum investment of $15,000, which would purchase 5,000 units, "unless this requirement is waived by the company in its sole discretion." Rohlf Aff., Att. 22. The "Statement of Issuer" submitted to the Minnesota Department of Commerce states that the "issuer proposes to make sales to not more than 35 non-accredited investors who are existing shareholders of the issuer and to an unlimited number of accredited investors." Rohlf Aff., Att. 35.

These plaintiffs' (the 1988 plaintiffs) purchases are summarized as follows:

| Plaintiff | Amount |
| --- | --- |
| Marvin F. and Carol L. Bormann | $ 30,000 |
| Thomas H. Healey | 22,500 |
| Bruce D. Hustad | 15,000 |
| Thomas B. Hustad | 15,000 |
| Gregory R. Oas | 4,998 |
| Donald W. Opheim | 15,000 |
| Thomas J. & Nancy A. Pollock | 6,000 |
| Rodney E. Sandelin | 15,000 |
| William R. Zimbinski | 15,000 |
| John F. and Carol M. Johnson | 15,000 |

### 3. *The 1989 Rights Offering*

By prospectus, dated September 11, 1989, AVSI undertook a further offering of 11,927,476 "rights" to shareholders of record (the 1989 rights offering). Each right granted the non-transferable right to purchase a share of AVSI common stock at $.35 per share. The 1989 Rights Offering was registered pursuant to the 1933 Act. The plaintiffs' purchases are summarized as follows:

**2.** Rule 10(b)–9 states, in pertinent part:
(a) It shall constitute a *manipulative or deception device or contrivance,* as used in section 10(b) of the Act, for any person, directly or

| Plaintiff | Amount |
| --- | --- |
| Marvin F. and Carol L. Bormann | $ 14,000 |
| Richard L. Crowell | 7,000 |
| Thomas H. Healey | 21,000 |
| Bruce D. Hustad | 7,000 |
| Thomas B. Hustad | 7,000 |
| Arthur J. Kohler, Jr. | 3,500 |
| Arthur J. and Elsie Kohler, Sr. | 7,000 |
| Leonard S. Lewicke | 17,500 |
| Donald W. Opheim | 17,500 |
| William R. Zimbinski | 10,500 |
| John F. and Carol M. Johnson | 14,000 |

### *Summary Judgment*

As indicated, defendants seek partial summary judgment. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party must produce concrete facts demonstrating the issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the opposing party fails to carry that burden by establishing significant probative evidence, summary judgment should be granted. *Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268 (8th Cir.1988). The factual and legal complexity of a case does not, per se, preclude summary judgment. *Cf. Midwest Radio Co. v. Forum Publishing Co.,* 942 F.2d 1294 (8th Cir.1991) (no heightened standard for summary judgment in complex antitrust cases).

The Court will address defendants' summary judgment motion as to each count, seriatim.

### I. Violation of Section 10(b) of the 1934 Act, and Rule 10b–9

In Count 7, plaintiffs allege a violation of § 10(b) of the 1934 Act, and particularly Rule 10b–9 [2] thereunder. This rule applies

indirectly, in connection with the offer or sale of any security, to make any representation:

in an "all or none" securities offering, or any other similar offering, in which the seller promises the subscriber a prompt refund if all of the securities are not sold at the specified price, by the specified closing date. *See* Exchange Act Release No. 6864 [1961–64 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 76,855 (July 30, 1962) (release proposing rule) [hereinafter *SEC Release No. 6864*]; Exchange Release No. 34–11532 [1974–75 Transfer Binder] 3 Fed.Sec.L.Rep. (CCH) ¶ 22,730 (July 11, 1975) [hereinafter *SEC Release No. 34–11532*]. If an offering meeting the definition of Rule 10b–9 is not fully subscribed by the specified closing date, the seller must return the subscription proceeds to the investor. *SEC Release No. 34–11532.* Because AVSI's 1987 "minimum-maximum," private placement offering included a refund representation, as contemplated by Rule 10b–9, AVSI was required to comply with the rule's refund requirements. *See C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1431 (10th Cir.1988).

Plaintiffs claim that defendants' extensions of the closing date of the 1987 offering invoked the protection of Rule 10b–9, thereby requiring defendants to notify plaintiffs of each extension, to provide plaintiffs an opportunity to withdraw from the proposed purchase, and to refund plaintiffs' money upon withdrawal. Plaintiffs assert that their claim has been filed "within three years of the date of purchasing the securities." Compl. ¶ 199. Defendants move for summary judgment on Count 7 of the complaint on the basis that plaintiffs' claim is untimely.

██ Inherent in plaintiffs' claim, however, is a threshold jurisdictional question: Does Rule 10b–9 provide a private cause of action? In the absence of such a private right, this Court is without subject matter jurisdiction. *See e.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 369–70, 102 S.Ct. 1825, 1834–35, 72 L.Ed.2d 182 (1982); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 579, 99 S.Ct. 2479, 2491, 61 L.Ed.2d 82 (1979). The issue of subject matter jurisdiction may be raised by this Court,* sua sponte*, at any time and may not be waived. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990) (citing *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

Rule 10b–9 does not expressly provide a private cause of action, nor do interpretive releases issued at the rule's adoption shed light on the question. *See SEC Release No. 6864* (proposed rule); Exchange Act Release No. 6905 [1961–64 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 76,869 (October 3, 1962) (adopting rule 10b–9) [hereinafter *SEC Release No. 6905*].

The Court has found no reported cases touching the question. The rule seems to have been considered in twelve reported decisions, only two of which were filed by private plaintiffs. *See Hardy v. First American Bank, N.A.*, 774 F.Supp. 1078 (M.D.Tenn.1991); *Aberbach v. Wekiva Associates, Ltd.*, 735 F.Supp. 1032, 1034 (S.D.Fla.1990). Each of these courts simply presumed the existence of a private 10b–9 claim.

██ In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court defined the parameters under which a private right was available under a federal statute.[3] The Court did not, however,

---

(1) To the effect that the security is being offered or sold on an "all-or-none" basis, ... or

(2) To the effect that the security is being offered or sold on any other basis whereby all or part of the consideration paid for any such security will be refunded to the purchaser if all or some of the securities are not sold, unless the security is part of an offering or distribution being made on the condition that all or a specified part of the consideration paid for such security will be promptly refunded to the purchaser unless (i) a specified number of units of the security are sold at a specified price within a specified time, and (ii) the total amount due the seller is received by him by a specified date.

17 C.F.R. § 240.10b–9 (1991) (emphasis in original).

**3.** In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080 (1975), the Court provided four considerations to establish an implied private right of action. "First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted' ... that is does the statute create a federal right in favor

consider the availability of a private right arising under an agency rule. This question has been considered by two circuit courts. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir.1984) (private right of action under Rule 10b–16); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939 (3rd Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985) (private right of action under Rule 10b–16). *Cf. Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980) (private right of action under New York Stock Exchange Rule 405 and National Association of Securities Dealers Rules of Fair Practice). Both circuits have adopted a two-part test to determine the existence of an implied private cause of action under an SEC Rule: (1) whether Congress intended to delegate authority to establish a rule implying a private right of action; and (2) whether the rule was drafted such that a private action may legitimately be implied. *Angelastro,* 764 F.2d at 947; *Jablon,* 614 F.2d at 679.

Minnesota's district courts have applied this analysis. *See Finne v. Dain Bosworth,* 648 F.Supp. 337, 344 n. 2 (D.Minn. 1986) (implied remedy under Rule 10b–16); *Baden v. Craig–Hallum, Inc.,* 646 F.Supp. 483, 488 n. 4 (D.Minn.1986) (same). This Court, too, adopts the Third and Ninth Circuit's formulation.

The initial inquiry, then, is whether, in adopting § 10(b), Congress intended to delegate authority to the SEC to promulgate rules under which implicit claims may arise. This inquiry invokes the *Cort v. Ash* analysis. *Angelastro,* 764 F.2d at 957. But a mechanical application of the *Cort* factors is inappropriate to an examination

of a private right of action arising under § 10(b). This is because the courts themselves have molded the § 10(b) regulatory scheme into a pervasive set of private rights. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 380, 103 S.Ct. 683, 686, 74 L.Ed.2d 548 (1983) (private right under Rule 10b–5 now "simply beyond peradventure"); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir.1984) (private right of action under Rule 10b–16). Accordingly, step one of the inquiry must be answered in the affirmative.

Part two of the inquiry requires examination of two administrative law issues: (1) whether the agency rule is properly within the scope of the enabling statute; and (2) whether implying a private right of action will further the substantive purposes of the enabling statute. *Angelastro,* 764 F.2d at 957; *Robertson,* 749 F.2d at 536–537. Accordingly, the Court must examine the development and purpose of Rule 10b–9.

Rule 10b–9 was issued pursuant to the authority granted under §§ 10(b) and 23(a) of the 1934 Act. *SEC Release No. 6905.* Section 23(b) grants broad authority to the SEC to adopt rules and regulations "as may be necessary or appropriate," to implement Title 15 of the 1934 Act. 15 U.S.C. § 78w(a).[4]

Section 10(b) similarly confers broad authority to adopt rules "necessary or appropriate in the public interest or for the protection of investors." This includes rules proscribing "any manipulative device or contrivance." 15 U.S.C. § 78j(b). It is clear to the Court that Rule 10b–9 specifically defines a type of "manipulative device or contrivance." As such, the rule falls within the SEC's rule-making authority.

---

of the plaintiff? ... Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.* 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

**4.** Section 23(a) grants broad rule-making authority to the SEC and provides, in pertinent part:

The Commission ... shall ... have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this title for which they are responsible ... and may for such purposes classify persons, securities, transactions, statements, applications, reports and other matters ... and prescribe greater, lesser, or different requirements for different classes thereof.

15 U.S.C. § 78w(a)(1).

It appears to the Court that a private remedy under Rule 10b–9 bears a "reasonable relation to the statutory purposes" of § 10(b). *Robertson,* 749 F.2d at 536. The primary purpose of Rule 10b–9 is to address "misleading representations concerning the conditions under which purchasers will obtain refunds." *SEC Release No. 6905.* The rule's refund requirement is designed to protect an investor's funds when the market considers the offering price too high, or the investment too risky or speculative. *A.J. White & Co. v. Sec. & Exch. Comm'n,* 556 F.2d 619, 623 (1st Cir. 1977), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *S.E.C. v. Blinder, Robinson & Co.,* 542 F.Supp. 468, 476 (D.Colo.1982), *aff'd,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,491, 1983 WL 20181 (10th Cir.1983). Therefore, the Court finds that an implied private right of action exists under Rule 10b–9.

Having determined that a private Rule 10b–9 claim may exist, the Court turns to defendants' motion for summary judgment. Defendants contend that no Rule 10b–9 violation has occurred, but if such a violation has occurred, plaintiffs' claim is barred by the statute of limitations.

Plaintiffs respond that defendants' extensions of the offering, first to July 31, 1987, and later to August 31, 1987, coupled with defendants' failure to reconfirm plaintiffs' subscriptions after each extension, violated Rule 10b–9. Plaintiffs also contend that defendants' failure to apply $182,500 of the offering proceeds to repayment of loans, as disclosed in Supplement No. 3, and their failure to accurately disclose AVSI's accounts payable, constituted violations of Rule 10b–9. Defendants deny that Rule 10b–9 was violated in either respect, because the 1987 Phase II plaintiffs purchased their shares after July 24, 1987, when the 430,000 minimum number of shares had already been sold.

■ Under Rule 10b–9, a seller may not engage in any act "designed to create the appearance of a successful offering in order to avoid the refund feature of the offering." *C.E. Carlson, Inc. v. S.E.C.,* 859 F.2d 1429, 1434 (10th Cir.1988). The SEC staff has declared that any of the following acts will terminate an offer and require a refund of subscriber funds: (a) extension of the offering period; (b) change in the offering price; (c) change in the minimum purchase price required of investors; (d) change in the amount of proceeds necessary to release proceeds in escrow; or (e) change in the application of proceeds. 1 Thomas L. Hazen, The Law of Securities Regulation § 6.3 at 275 (2d ed. 1990); Scarff, *Developments in Trading Practices,* Fourteenth Annual Institute on Securities Regulation, Vol. 1, p. 471; Tucson Hotel Associates, SEC No–Action Letter (March 12, 1985); Reliance Trust Co., SEC No–Action Letter (July 25, 1985). Each such act, in effect, would nullify a represented contingency of the offering, rendering the contingency a misrepresentation subject to liability under § 10(b). *See C.E. Carlson, Inc. v. S.E.C.,* 859 F.2d 1429, 1433 (10th Cir.1988); *Securities Exchange Com'n v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1095 (2d Cir.1972).

At the same time, the SEC staff has made clear that a seller may extend an offer beyond the specified closing date, without violating Rule 10b–9, upon the following conditions:

(a) prior to the specified expiration date, a reconfirmation offer must be made to all subscribers that discloses the extension of the offering and any other material information necessary to update previously provided disclosure;

(b) the reconfirmation offer must be structured so that the subscriber affirmatively elects to continue his investment and so that those subscribers who take no affirmative action will have their funds returned to them;

(c) the reconfirmation offer must be made far enough in advance of the specified expiration date so that any subscriber who does not elect to continue his investment will have his funds returned to him promptly after the specified expiration date.

Interpretive Release on Regulation D, Exchange Act Release No. 33–4655 [1984–85

Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 2,380 (March 3, 1985) at question 80.

■ The parties agree that the offering was extended with the issuance of Supplement No. 1 on June 30, 1987, and Supplement No. 3 on August 12, 1987. Defendants have produced signed confirmation agreements in which all of the Phase II plaintiffs, except Lewicke, approved the extensions and elected to continue their investments.[5] In a confirmation, dated July 28, 1987, Lewicke stated that he had received and read Supplement No. 1 and reconfirmed his intention to purchase 10,000 shares. Rohlf Aff., Att. 7. Lewicke did not, however, reconfirm after receiving Supplement No. 3 on August 12, 1987, which extended the offering to August 31, 1987.

■ The Court determines, then, that Lewicke is the only plaintiff who has a possible Rule 10b–9 claim based upon defendants' extension of the offering period. The Court further holds that any Rule 10b–9 violation based upon an improper extension of the offering necessarily occurs at the time of the extension. It is at that time that the seller's obligation to reconfirm arises. Accordingly, if the defendants have violated Rule 10b–9 with regard to Lewicke, the Court finds that such violation occurred on August 12, 1987. This is the date when defendants extended the offering to August 31, 1987, without securing a reconfirmation of Lewicke's subscription.

■ Plaintiffs also claim Rule 10b–9 violations based upon defendants' failure to apply $182,500 of the offering proceeds to repayment of loans, as disclosed in Supplement No. 3, and defendants' failure to disclose the amount of AVSI's accounts payable. In the opinion of the SEC staff, a true misapplication of the offering proceeds would be a Rule 10b–9 violation. *See Hazen, supra.* But Rule 10b–9 does not address disclosure of a corporation's ac-

counts payable status. Plaintiffs, therefore, have no claim for this alleged omission under Rule 10b–9.

■ Even if the failure to apply $182,500 of the offering proceeds to satisfy the corporation's debts could be construed as a misapplication, the Court finds that such violation occurred at the time of the alleged misrepresentation. A claim arising under Rule 10b–9 is essentially a claim of fraud and requires both a misrepresentation and scienter. *Sec. & Exch. Com'n v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1095 (1972). In this case, the alleged misrepresentation was set forth in Supplement No. 3, issued on August 12, 1987, and any Rule 10b–9 violation occurred on that date.

The Court has determined that Lewicke was entitled to assert a Rule 10b–9 claim based upon the extension of the offering period. For the nonce, the Court will assume that all of the 1987 Phase II plaintiffs had a Rule 10b–9 claim based upon the alleged misapplication of offering proceeds. But the Court must still determine whether plaintiffs' claims have been raised in a timely fashion.

During the pendency of this motion, the statute of limitations applicable to claims arising under § 10(b) has been addressed by both the Supreme Court and Congress. In *Lampf, Pleva, Lipkind, et al. v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court held that claims arising under § 10(b) of the 1934 Act were governed by the one-year/three-year statute of limitations set forth in § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e). At the time of oral argument, the law of this circuit required retroactive application of the *Lampf* ruling to this case. *Boudreau v. Deloitte, Haskins, & Sells,* 942 F.2d 497, 498 (8th Cir.1991). However, on December 19, 1991, Congress passed Sec-

---

**5.** In a confirmation, dated September 3, 1987, Johnson stated he had received and read Supplement No. 3 and reconfirmed his intent to purchase 10,000 shares. Rohlf Aff., Att. 8. In a confirmation, dated August 8, 1987, Crowell stated he had received and read Supplement No. 1 and reconfirmed his intent to purchase 5,000

shares. Crowell executed a similar confirmation, August 31, 1987, after receiving Supplement No. 3. Rohlf Aff., Att. 9. Finally, in a confirmation, dated August 24, 1987, Opheim stated he had received and read Supplement No. 3 and reconfirmed his intent to purchase 5,000 shares. Rohlf Aff., Att. 10.

tion 476, Public Law 102–242, 105 Stat. 2236, a provision which reverses *Boudreau* and requires only the prospective application of *Lampf*.[6]

■ The instant case was filed prior to June 19, 1991. Accordingly, the applicable limitations period is that which existed in this circuit pre-*Lampf*. Prior to the *Lampf* ruling, Eighth Circuit law required a court to apply the state statute of limitations most closely analogous to § 10(b) claims. *Vanderboom v. Sexton*, 422 F.2d 1233, 1237–38 (8th Cir.), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). Courts in this district have held that a claim arising under § 10(b) is most analogous to a fraud claim arising under § 80A.01 of the Minnesota Securities Act. *TCF Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F.Supp. 1408, 1430 (D.Minn.1988); *Nielsen v. Professional Financial Management, Ltd.*, 682 F.Supp. 429, 438 (D.Minn.1987). The appropriate statute of limitations, therefore, is the three-year provision set forth in § 80A.23, subdivision 7, of the Minnesota Securities Act, which applies to claims arising under § 80A.01. This section states:

> No person may commence an action ... under ... [section 80A.01] more than 3 years after the occurrence of the act or transaction constituting the violation.

Minn.Stat. § 80A.23, subd. 7 (1991).

■ Plaintiffs assert that the "act or transaction constituting the violation" was the sale, and the sale occurred on August 31, 1987, when defendants accepted plaintiffs' subscription agreements. This position is inaccurate as a matter of law. "[T]he act or transaction constituting the violation under Minnesota Statutes, § 80A.01, is not the purchase or sale itself, but rather the making of an untrue statement or engaging in fraud or deceit in connection with that sale." *TCF Banking*, 706 F.Supp. at 1415. The Court has already determined that the acts or transac-

tions constituting the violation of Rule 10b–9 occurred, if at all, on August 12, 1987, at the time defendants extended the offering without securing Lewicke's reconfirmation and "misrepresented" the use of the proceeds to the 1987 Phase II plaintiffs. The complaint was filed on August 30, 1990, more than three years later. Consequently, each plaintiff's putative Rule 10b–9 claim is time-barred.

## II. Violation of Section 12(2) of Securities Act of 1933

■ The 1987 Phase II plaintiffs base Count 8 of their complaint on § 12(2) of the 1933 Act, 15 U.S.C. § 77*l*, claiming they have incurred damages, costs, and attorneys fees as a proximate result of defendants' misrepresentations and omissions of material fact in connection with the purchase and sale of the AVSI securities. Compl. ¶ 202, 204. Plaintiffs allege that they have complied with the applicable statute of limitations by "bringing this action within three years of the date of purchasing the securities." Compl. ¶ 203.

■ A claim arising under § 12(2) is governed by the statute of limitations set forth in § 13 of the 1933 Act, which requires filing of a claim "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence" and in no event "more than three years after the sale." 15 U.S.C. § 77m. The three year statute of repose is absolute, and is not subject to equitable tolling. *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).

Defendants contend that the 1987 Phase II plaintiffs failed to file this action within three years of the date of the "sale," as that term was defined by this Court in *Nielsen v. Professional Financial Man-*

---

**6.** Section 476, to be codified as § 27A of the 1934 Act, states:

> The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

[4 Exchange Act] Fed.Sec.L.Rep. (CCH) ¶ 26,-540A (Dec. 26, 1991).

*agement, Ltd.,* 682 F.Supp. 429 (D.Minn. 1987), and as a result, defendants' § 12(2) claim is now time-barred. In *Nielsen,* a case involving investments in equipment leases, the Court held that the statute of limitations accrued when plaintiffs entered into the leases. *Id.* at 438.

Plaintiffs contend that *Nielsen* is distinguishable because these securities contracts were formed on the date of AVSI's acceptance, rather than the date the contracts were formally executed by plaintiffs. Plaintiffs cite no authority in support of this contention. The Court finds *Nielsen* persuasive and concludes that the statute of limitations as to each plaintiff's § 12(2) claim accrued when the individual plaintiff executed an irrevocable subscription agreement.[7] *Accord Brantley v. E.F. Hutton & Co.,* 710 F.Supp. 135, 140 (E.D.Pa.1989) (citing *Nielsen* and holding that § 12(2) claims accrued when subscription agreements were executed; rejected argument that sale occurred at acceptance of subscription agreements). Plaintiffs' complaint was filed August 30, 1990, more than three years after all of the sales in question. Accordingly, the 1987 Phase II plaintiffs' § 12(2) claims are dismissed as untimely.

III. Fraudulent Misrepresentation Claims

■ Counts 12, 13, and 14 of plaintiffs' complaint allege fraudulent misrepresentation in connection with the 1987 and 1988 private placements and the 1989 rights offering. On each count, plaintiffs allege that defendants' misrepresentations and omissions "were wholly or in part contained in or omitted from, but not limited to" the 1987 and 1988 Private Placement Memoranda and the 1989 Rights Offering Prospectus. Compl. ¶ 224, ¶ 234, and ¶ 244.

Specifically, plaintiffs allege misstatements of material fact in all three offerings relative to: (1) the acceptance of subscriptions of existing shareholders, prior to the 1987 offering, for the purchase of Series C Preferred Shares, at $.35 per share, Compl. ¶ 85(a); (2) the issuance of promissory

notes and five-year warrants in June and July, 1987, Compl. ¶ 85(b); (3) defendants' estimates of future financing needs, Compl. ¶ 85(b) and (c), and ¶ 127(b); and (4) the existence of strenuous market competition from AVSI's two main competitors, Compl. ¶ 105(a) and (c), and ¶ 127(a) and (c).

■ To establish a claim for fraudulent misrepresentation, plaintiffs must prove (1) a false representation; (2) of a material past or present fact, susceptible of knowledge; (3) intent to deceive (scienter), or recklessness of the representation's truth or falsity; (4) justifiable reliance on the misrepresentation by the party deceived, inducing him to act thereon; and (5) damages proximately caused by the misrepresentation. *Midland Nat'l Bank of Minneapolis v. Perranoski,* 299 N.W.2d 404, 411 (Minn.1980); *Weise v. Red Owl Stores, Inc.,* 286 Minn. 199, 202–03, 175 N.W.2d 184, 187 (1970).

■ Defendants move for summary judgment on all three fraudulent misrepresentation counts. They contend that plaintiffs have failed to produce "a scintilla of evidence" establishing the necessary element of reliance upon the alleged misrepresentations in the offering documents. "It is elementary that absent the essential element of reliance, an action for fraud must fail." *Breezy Point Air., Inc. v. First Federal Sav. & Loan Ass'n of Brainerd,* 288 Minn. 534, 536, 179 N.W.2d 612, 615 (1970). In support, defendants offer the deposition testimony of 10 of the 12 plaintiffs, in which each plaintiff essentially admits he or she did not rely on the offering documents in making their investment decisions. Rohlf Aff., Att. 40–50. Plaintiffs have offered no evidence of reliance and, instead, request additional time for discovery.

■ Although reliance is generally a question of fact, this Court is not precluded from granting summary judgment where plaintiffs fail to demonstrate a genuine issue of material fact as to this essential

7. Plaintiffs tendered their subscription agreements and payments on the following dates: Crowell on August 8, 1987; Johnson on August 4, 1987; Lewicke on July 28, 1987; and Opheim on August 24, 1987. Each agreement states that the subscriber "irrevocably subscribes" to the shares set forth in the contract. Rohlf Aff. ¶ 2, Att. 7–10.

element. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 839 F.2d 366, 372 (7th Cir.1988) (upholding summary judgment of Illinois fraud claim for failure to produce factual issue on reliance element); *Davidson v. Wilson,* 763 F.Supp. 1465, 1468 (D.Minn.1990) (failure to present evidence of reasonable reliance required dismissal of 10b–5 and state common law fraud claims). "[P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity for discovery." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). *See* Fed.R.Civ.P. 56(e).

The Court finds that plaintiffs have had adequate time to conduct discovery on the issue of reliance. This is particularly true here, where the evidence of their own reliance is uniquely within the possession of the plaintiffs themselves. They ought to know, presumably with no discovery, the nature of their own reliance.

The record presents no evidence of reliance; defendants have presented substantial evidence to the contrary. Because plaintiffs have failed to demonstrate a genuine factual dispute as to plaintiffs' reliance on the offering documents, or on any other representations made by defendants, summary judgment is granted on Counts 12, 13, and 14.

#### IV. Failure to Register the 1987 Private Placement Securities

■ In Count 15, the 1987 Phase II plaintiffs allege that defendants failed to register the AVSI securities, thus violating Minnesota and North Dakota blue sky laws. Plaintiffs also allege that this non-registration was fraudulently concealed until shortly before this action was filed. Compl. ¶ 252 and ¶ 253.

Plaintiffs Johnson, Lewicke, and Opheim claim defendants have violated § 80A.08 of the Minnesota Securities Act, Minn.Stat. § 80A.08, which makes it unlawful for any person to offer or sell any security unless it is registered, or exempted under

§ 80A.15. Plaintiff Crowell claims defendants have violated § 10–04–04 of the North Dakota Securities Act, which makes it unlawful to sell or offer for sale unregistered securities unless the seller has obtained an exemption under § 10–04–06. Defendants contend that these claims are barred by each state's applicable statute of limitations.

■ As to the Minnesota claims, § 80A.23, subdivision 1, provides a civil remedy for a violation of § 80A.08. This remedy is governed by the statute of limitations set forth in § 80A.23, subdivision 7, which states, "No person may commence an action under subdivision 1 more than three years after the sale upon which such action is based." Minn.Stat. § 80A.23, subd. 7. This provision is not subject to the doctrine of equitable tolling. *Applebaum v. Ceres Land Co.,* 687 F.2d 261, 263 (8th Cir.1982). Consequently, plaintiffs had three years from the date of the sale to bring this claim.

As the Court has previously ruled, the sales in question occurred on the date plaintiffs executed their subscription agreements. The sale to Johnson occurred on August 4, 1987, the sale to Lewicke occurred on July 28, 1987, and the sale to Opheim occurred on August 24, 1987. Because the complaint was filed August 30, 1990, more than three years after these sales, plaintiffs claims arising under § 80A.23, subdivision 1, are dismissed as untimely.

Focusing on the North Dakota claim, Crowell seeks a rescission of the subscription agreement under § 10–04–17. Section 10–04–17 also provides the applicable statute of limitations which provides:

> No action shall be brought under this section for the recovery of the purchase price after three years from the date of such sale or contract for sale nor more than one year after the purchaser has received information as to the matter or matters upon which the proposed recovery is based.

N.D.Cent.Code § 10–04–17.[8]

As indicated, *supra*, the sale to Crowell occurred on August 3, 1987. Because the complaint was filed on August 30, 1990, more than three years after the date of the sale, Crowell's claim arising under § 10–04–04 is dismissed as untimely.

### V. Failure to Register the 1988 Private Placement Securities

In Count 16, the 1988 plaintiffs allege that defendants failed to register the AVSI securities, in violation of Minnesota blue sky law. Plaintiffs Healey, B. Hustad, T. Hustad, Johnson, Lewicke, Oas, Opheim, Pollock, Sandelin, and Zimbinski claim defendants have violated the Minnesota Securities Act, Minn.Stat. § 80A.08, which makes it unlawful for any person to offer or sell any security unless it is registered, or exempted under § 80A.15.

In connection with the 1988 Private Placement, AVSI filed a "Statement of Issuer," dated March 30, 1988, with the Minnesota Department of Commerce. This was later amended by yet another "Statement of Issuer," dated June 23, 1988. Rohlf Aff., Att. 35. The "Statement of Issuer" claimed an exemption, pursuant to § 80A.15, subd. 2(h), and provided for a minimum purchase of 5,000 shares which, under the 1988 PPM, could be waived in AVSI's sole discretion. The "Statement of Issuer," and the incorporated 1988 PPM, also specified that sales could be made to not more the 35 non-accredited investors who were existing shareholders of AVSI. Rohlf Aff., Att. 1, 35.

Plaintiffs contend that defendants failed to comply with the above requirements because: (1) sales were made to plaintiffs B. Hustad, Oas, Sandelin, T. Hustad, and Pollock, who were neither accredited investors nor existing shareholders of AVSI; and (2) fewer than 5,000 shares were sold to plaintiffs Oas and Pollock. As a result, plaintiffs deny the validity of defendants'

claimed exemption. From this position, they urge that the sales were made in violation of § 80A.08.

By the offering's terms, defendants retained the sole discretion to waive the minimum sales requirement. Rohlf Aff., Att. 25. Furthermore, plaintiffs have presented no authority suggesting that sales in contravention of the stated minimum would render the registration exemption invalid.

With regard to plaintiffs' standing as accredited investors, defendants have produced signed subscription agreements in which these plaintiffs, themselves, indicate that they are accredited. Rohlf Aff., Att. 25, 26, 27, 29, and 32. In their memorandum opposing summary judgment, and only in that memorandum, plaintiffs question the validity of these agreements. The memorandum states that each plaintiff (with the exception of Oas) has given sworn deposition testimony that he did not place or authorize the markings on the agreement indicating his accredited status.

The Court has carefully reviewed the materials submitted by plaintiffs. Plaintiffs have submitted neither the transcripts of this sworn testimony nor affidavits or any other evidence to support the allegation that execution of these agreements was fraudulent. Plaintiffs must produce admissible evidence, by reference to specific, concrete facts in the record, demonstrating the issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 274 (8th Cir.1988); Fed.R.Civ.P. 56(e). Because plaintiffs have failed to produce admissible evidence, or even direct the Court to evidence in the record in support of the allegations set forth in their memorandum, de-

---

**8.** Section 10–04–17, as amended in 1991, now provides a five year statute of limitations. All statutes enacted by the North Dakota legislature, whether substantive or procedural, are to be applied prospectively unless the legislature explicitly states that they are to be applied retroactively. *State v. Hersch,* 445 N.W.2d 626, 630 (N.D.1989). *See also* N.D.Cent.Code § 1–02–10 (code is not retroactive unless expressly declared as such). Nothing in § 10–04–17, or related provisions, indicates that the new five year period is to be applied retroactively. Accordingly, Crowell's claim is governed by the statute as it read at the time his claim arose.

fendants' motion for summary judgment on Count 16 is granted.

### VI. Securities Fraud Under the Minnesota and North Dakota Securities Acts

In Count 17, the 1987 Phase II plaintiffs allege defendants made fraudulent misrepresentations in the 1987 PPM, and also omitted to state material information in violation of § 80A.01 of the Minnesota Securities Act, and § 10–04–17 of the North Dakota Securities Act. Compl. ¶ 268–276. Specifically, plaintiffs allege non-disclosure with respect to: (1) AVSI's acceptance of subscriptions from certain existing shareholders for the purchase of 845,428 Series C preferred shares at $.35 per share; (2) AVSI's representations regarding its capitalization; (3) AVSI's issuance of promissory notes and five year warrants in June and July, 1987; and (4) AVSI's extension of the offering beyond August 31, 1987.

Here, too, defendants move for summary judgment on the basis that plaintiffs have failed to comply with the applicable statutes of limitations.

 Section 80A.01 of the Minnesota Securities Act lists fraudulent activities which are prohibited in connection with the offering or sale of a security. Minn.Stat. § 80A.01. Civil liability for violation of § 80A.01 arises under § 80A.23, subdivision 2. A civil action arising under these two provisions is governed by the statute of limitations set forth in § 80A.23, subdivision 7, which states:

> No person may commence an action ... under ... [§ 80A.23] subdivision 2 more than three years after the occurrence of the act or transactions constituting the violation.

Minn.Stat. § 80A.23, subd. 7. Under this provision, a claim accrues at the time of the act or transaction constituting the alleged fraud, not at the time of the sale. *TCF*

*Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F.Supp. 1408, 1415 (D.Minn.1988). This limitation period is absolute, and is not subject to equitable tolling. *Kopperud v. Agers*, 312 N.W.2d 443, 446–447 (Minn. 1981).

 Plaintiffs now assert that the specific misrepresentations and omissions set forth in the complaint are not the fraud at issue but, rather, defendants' acts subsequent to August 31, 1987, are those which constitute the violations of § 80A.01. The Court will not permit plaintiffs to amend their 105 page complaint in this fashion.[9] Furthermore, only those acts which caused plaintiffs to enter into the transaction and proximately caused plaintiffs' damages are actionable under § 80A.01. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 537–38 (Minn.1986). *See also Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 313 (2nd Cir.1985) (plaintiff in 10(b) action must prove transaction causation and loss causation).

A moment's reflection makes clear that acts occurring after plaintiffs' purchases of the AVSI securities could not have caused plaintiffs to enter into this transaction. Even if such an act occurred, it would not be actionable under § 80A.01. Those acts which occurred prior to the sales in question all happened more than three years prior to the commencement of this lawsuit. Accordingly, defendants' motion is granted and the claims of Johnson, Lewicke, and Opheim are dismissed as untimely.

 In Count 17, Crowell asserts a securities fraud claim, arising under § 10–04–17 of the North Dakota Securities Act. As previously stated, Crowell was required to bring his claim within three years of the date of the sale, or within one year of receiving information of the alleged misrepresentations. N.D.Cent.Code § 10–04–

---

**9.** Indeed, plaintiffs formally moved to amend their complaint on October 15, 1991, which motion is currently pending before a magistrate judge of this Court. But plaintiffs have failed to allege additional misrepresentations or omissions in relation to Count 15. *See Oliver v. Resolution Trust Corp.*, 955 F.2d 583 at 585 (8th Cir.1992) (district court did not abuse discretion by issuing dismissal with prejudice where party failed to allege facts critical to claim, and failed to move for amendment of complaint pursuant to Fed.R.Civ.P. 15(a)). In fact, the October, 1991, proposed amendments make no substantive changes in any of the counts now under consideration in this motion.

17. The sale occurred on August 3, 1987, and the complaint was filed August 30, 1990. Therefore, for the same reasons set forth above in relation to Count 15, Crowell's claim is time-barred.

Based upon the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Plaintiffs' claims set forth in Counts 7, 8, 15, 16, and 17 are dismissed as time-barred by the applicable statutes of limitations.

2. Defendants' motion for summary judgment on Counts 12, 13, and 14 is granted.